**IMG-152** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1251
_____

QIAO ER LIAN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A89 252 004)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2011
Before:  BARRY, HARDIMAN AND COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  June 10, 2011)
_____

OPINION
_____

PER CURIAM

Qiao Er Lian, a native and citizen of China, petitions for review of an order of the

Board of Immigration Appeals ("BIA") that dismissed his appeal from an Immigration

Judge's ("IJ") final removal order.  We will deny the petition for review.

Lian entered the United States without inspection in 2007, and applied for asylum and related relief. His asylum claim was based on his allegation that after giving birth to their son, his wife was forced to abort a second pregnancy. Lian amended his application on January 20, 2009 to include a claim that he had been baptized in the Catholic church on December 25, 2008, and that he feared persecution in China on account of his religious beliefs. After a hearing on his claims, the IJ denied relief.

On appeal, the BIA agreed with the IJ that Lian's claim of persecution based on his wife's abortion was foreclosed by this Court's decision in Lin-Zheng v. Attorney General, 557 F.3d 147 (3d Cir. 2009) (en banc). The BIA recognized that Lian could still claim persecution in his own right on account of "other resistance" to China's population policy, but agreed with the IJ that Lian had not shown that he was persecuted for engaging in any form of other resistance, as he was not present at the time his wife was taken away for an abortion, and he did not otherwise communicate his disapproval to the authorities in any way.

As to his religious claim, the BIA noted that Lian was unaware of whether Catholics can practice their religion in China, or whether Catholicism is officially recognized in China, but that based on what friends told him, he was against attending any official church in China because he believed that the government does not believe in God. The BIA agreed with the IJ that the background evidence did not demonstrate a pattern or practice of persecution of Catholics in China, and that while the record showed that some church leaders had been subject to persecution, Lian was not a church leader.

2

The BIA further noted that tolerance of unregistered churches varied widely by locale, and that Lian was not aware of whether there were any unregistered churches near his home in China. The BIA found that his fear of persecution was thus speculative. The BIA also concurred with the IJ that Lian had not established that he was likely to be tortured based on his illegal departure from China, as the record did not reflect that persons repatriated after a first illegal departure from China encountered persecution or torture. The BIA dismissed Lian's appeal, and Lian filed a timely, counseled petition for review.

We have jurisdiction to review a final order of removal of the BIA under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F. 3d 215, 222 (3d Cir. 2004). Our standard of review is narrow. We must sustain the Board's removal order if there is substantial evidence in the record to support it. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001).

An applicant seeking asylum bears the burden of showing that he is a "refugee"; that is, he is "a person who is unable or unwilling to return to his country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003), quoting 8 U.S.C. § 1101(a)(42)(A); see also 8 C.F.R. § 1208.13(a) (allocating burden of proof). Further, a person who has been persecuted for

3

failure or refusal to undergo a forced abortion or involuntary sterilization, or "for other resistance to a coercive population program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). Persecution does not include all treatment regarded as unjust or unfair; rather, it must be "so severe that [it] constitute[s] a real threat to life or freedom." Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006) (citations omitted).

The BIA here properly noted that Lian was not eligible for asylum based solely on his wife's forced abortion. Lin-Zheng, 557 F.3d at 156-57. Lian implicitly acknowledges this, but argues that he established past persecution based on his own resistance to China's family planning policy. See id. at 157 (noting that spouses remain eligible for relief if they qualify as a refugee under § 1101(a)(42) based upon their own persecution, or well-founded fear of persecution, for "other resistance" to a coercive population control program). As evidence of resistance, Lian notes that he persuaded his wife to have her IUD removed, that he paid for the removal, that he deliberately impregnated her in defiance of the population policy, and that he helped his wife flee and hide from authorities. Even if these actions constitute "other resistance," the record does not compel a finding that his experiences based on that resistance rise to the level of persecution. Lian testified that he "felt very depressed" by his wife's abortion. A.R. 131. "[A] finding of past persecution might rest on a showing of psychological harm." Ouk v. Gonzales, 464 F.3d 108, 111 (1st Cir. 2006). But, even assuming that a spouse's emotional suffering remains a cognizable basis for asylum following Lin-Zheng, 557

4

F.3d at 156, we conclude that the record here does not establish that Lian suffered psychological harm rising to the level of persecution. Cf. Jiang v. Gonzales, 500 F.3d 137, 141-43 (2d Cir. 2007) (finding no past persecution where forced abortion resulted in illness and diminished health to petitioner's mother, imposing "anguish . . . and . . . economic loss" to him).

As to Lian's religious claim, we do not find that the record compels a finding that Lian is likely to be persecuted due to his Catholicism. As the BIA noted, China recognizes Catholicism as a religion. A.R. 168. The BIA referred to Exhibit 7, the State Department's 2008 International Religious Freedom Report for 2008, which states that "5.3 million persons worship" in the state-sanctioned Catholic churches, "and it is estimated that there are an additional 12 million or more persons who worship in unregistered Catholic churches . . . ." A.R. 169. The same report also states that "[t]he distinction between the official Catholic Church, which the Government controls politically, and the unregistered Catholic Church has become less clear over time," and that "[i]n some official Catholic churches, clerics led prayers for the Pope, and pictures of the Pope were displayed." A.R. 175. We agree that the record does not reflect a pattern or practice of persecution of Catholics outside of leadership positions.[1]

Because Lian did not meet the burden of showing that he is eligible for asylum, he necessarily does not meet the higher burden for withholding of removal. Chen v. Att'y Gen., No. 09-3459, ---F.3d---, 2011 WL 923353, at *5 (3d Cir. March 18, 2011). We

further agree that the record does not support a finding that Lian is likely to be tortured if he returns to China.

For the foregoing reasons, we will deny the petition for review.

[1] Lian has not argued in his brief that he would be singled out for persecution.